UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAVERNE MCBRYDE-O'NEAL,

Plaintiff,

-v-

23-CV-10113 (JPC) (RFT)

**REPORT AND RECOMMENDATION**

DINO POLICHETTI, ET AL.,

Defendants.

**TO THE HONORABLE JOHN P. CRONAN, UNITED STATES DISTRICT JUDGE:**

Plaintiff LaVerne McBryde-O'Neal, proceeding pro se (without a lawyer), alleges in her Second Amended Complaint ("SAC") that several local and federal law enforcement officers violated her constitutional rights and unlawfully seized her property during a search of her apartment. (*See generally* ECF 65-1, SAC; ECF 71, Letter Supplementing SAC.) Pending before the Court is Defendants' motion to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (*See* ECF 63, Mot. To Dismiss.) Having carefully reviewed the parties' submissions, and for the reasons discussed below, I respectfully recommend that Defendant's motion be GRANTED IN PART and DENIED IN PART, as set forth herein.

**FACTUAL BACKGROUND**

For purposes of the pending motion to dismiss, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in her favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 50 (2d Cir. 2017). I summarize Plaintiff's

1

allegations below. I take the allegations from Plaintiff's SAC (ECF 65-1), including the letter

supplementing the SAC (ECF 71), and Plaintiff's various submissions in opposition to the motion

to dismiss, which I may consider as part of the operative complaint due to Plaintiff's pro se

status. *See Simmons v. Putnam/N. Westchester Bd. of Coop. Educ. Servs.*, No. 19-CV-10388 (VB),

2020 WL 5505366, at *1 n.3 (S.D.N.Y. Sept. 9, 2020) ("Because plaintiff is proceeding pro se, the

Court also considers allegations made for the first time in plaintiff's opposition to the motion to

dismiss.").

Plaintiff lives with one of her adult sons in an apartment located at 112 East 128th

Street, Apt 11B, New York, NY 10035. (*See* ECF 65-1, SAC at 1; ECF 83, Plaintiff's Second Opp. to

Motion To Dismiss ("Pl.'s Second Opp.") at 3-4.) Her husband, Dexter Washington, receives mail

at the apartment and visits his family there but lives elsewhere. (*See* ECF 83, Pl.'s Second Opp.

at 4.) On January 3, 2023, the Honorable Sarah Netburn renewed an expired warrant that

authorized federal law enforcement officers to search Plaintiff's apartment and to seize any

evidence of illegal narcotics trafficking (*see* ECF 38-1, Search Warrant at 1-4); the warrant was

predicated on the order of a pill press machine by Washington, who had identified the

apartment as his residence.  (*See id.* at 27.)[1]

Defendants, along with other law enforcement officers, executed the warrant the next

day while Plaintiff was in her bedroom. (*See* ECF 83, Pl.'s Second Opp. at 1.) She heard the

---

[1]    The Court may take judicial notice of a search warrant because it is a public document.
*See, e.g., Floyd v. Rosen,* No. 21-CV-1668 (KMK), 2022 WL 1451405, at *2 (S.D.N.Y. May 9, 2022)
(taking judicial notice of a search warrant even though the plaintiff alleged a warrantless
search).

doorbell, called that she was coming, went to answer the door, and saw Defendant Polichetti standing in her kitchen with house keys taken from her husband. (*See id.*) When Plaintiff asked Polichetti who he was and how he had gotten into the apartment, Polichetti shoved her into the hallway of the building. (*See id.*) Around the same time, Plaintiff's son returned to the apartment from an errand. (*See id.*) Plaintiff and her son were required to wait in the hallway for several hours. (*See id.*; ECF 65-1, SAC at 3.)[2] At some point after Plaintiff complained to the officers that she had recently had foot surgery, the officers brought her a chair so she could sit. (*See* ECF 71, Letter Supplementing SAC at 1-2.) She also told the officers that she needed to use a bathroom, but the officers did not immediately take her to one; standing in the hallway, she urinated on herself before being taken to a bathroom. (*See* ECF 83, Pl.'s Second Opp. at 1.) While Plaintiff was in the hallway, Defendants and unnamed officers were in the apartment, where Plaintiff alleges that the officers allowed a police dog to defecate. (*See id.* at 4.) The excrement was wiped up with a "very costly shirt" from Plaintiff's closet. Polichetti and other officers in the hallway laughed about the incident. (*Id.*)

Plaintiff claims multiple constitutional violations. (*See id.* at 2; ECF 87, Pl.'s Surreply at 1.) She seeks damages for several physical injuries, including complications arising from being forced to stand while recovering from foot surgery and injuries to her shoulder, back, and left foot from being shoved by Defendant Polichetti; she also seeks damages for emotional distress. (*See* ECF 65-1, SAC at 6.) In addition, Plaintiff seeks compensation for damage to her apartment

---

[2]      The SAC is made up of several documents, all with different pagination. For the sake of clarity, all citations here are to the page numbers stamped by the Court.

arising out of the search as well as for confiscated property, including approximately $50,000 in cash, which was her life savings. (*See id.*; ECF 76, Pl.'s Letter; ECF 80, Pl.'s Letter.) Plaintiff alleges violations of: the Fourth Amendment, for illegal entry into her home based on an improperly issued warrant, without waiting after knocking and without showing her the warrant, for mistreatment during the search and using excessive force on her, and for damage of her property incident to the search; the Eighth Amendment, for mistreatment during the search; the Fifth Amendment, for destruction of and damage to her property; and the Fourteenth Amendment, for failure to provide her with equal protection under the law. (*See* ECF 83, Pl.'s Second Opp. at 2; ECF 87, Pl.'s Surreply at 1.)

## PROCEDURAL HISTORY

On November 16, 2023, Plaintiff sued New York City Police Department ("NYPD") Detective Dino Polichetti and John Doe law enforcement officers under the Court's federal question jurisdiction, alleging that Polichetti, as well as other law enforcement officers, had violated her federal constitutional rights conferred by the Fourth and Fourteenth Amendments. (*See generally* ECF 1, Compl.) By order dated December 1, 2023, the Court granted Plaintiff's request to proceed in forma pauperis ("IFP"), that is, without prepayment of fees. (*See* ECF 3, Order.) Your Honor referred this case to me for general pretrial supervision as well as making reports and recommendations on dispositive motions, which include motions that could result in a decision on whether the case may proceed in this Court. (*See* ECF 5, Order of Reference.)

On December 18, 2023, I issued a *Valentin* order, directing the United States Attorney's Office ("USAO") to identify the John Doe Defendants described in the Complaint. (*See* ECF 6,

Order at 2-3.) On February 9, 2024, the USAO identified Polichetti and four additional law enforcement officers involved in the incident (Task Force Officer ("TFO") Jose Ortiz; Special Agent ("SA") Michael Morris; SA Joseph Boccia; and TFO John Dooley). (*See* ECF 14, Defs.' Letter). On February 21, 2024, Plaintiff filed the AC, which added the four newly identified Defendants; that filing attached a letter questioning the USAO's identification of only five agents, because there were at least 23 plainclothes officers and two uniformed officers who participated in the incident. (*See* ECF 19, AC at 8.) I issued a second *Valentin* order, directing Corporation Counsel, which is the attorney for and agent of the NYPD, to identify any NYPD John Doe and Jane Doe Defendants described in the AC. (*See* ECF 20, Order at 2.)

On May 8, 2024, the USAO filed a letter identifying five additional law enforcement agents who had been involved in the incident (Fernando Bonilla, Keith Ames, Guarionex Marte, David Comesanas, and Michael Ingram). (*See* ECF 33, Defs.' Letter, at 1-2.)[3] In that letter, the USAO, noting the likelihood that Plaintiff would file a SAC and with Plaintiff's consent, requested that I stay the obligation of the five then-named Defendants to respond to the operative complaint. (*See id.*) I declined to do so. (*See* 34, Order at 3.) Instead, I set a briefing schedule that required the five then-named Defendants to file their anticipated motion to dismiss by June 28, 2024; required Plaintiff to file any SAC naming additional defendants by July 8, 2024; giving all Defendants until August 5, 2024 to file their anticipated motion to dismiss any SAC, including either (1) a brief in support of their motion(s) to dismiss the SAC or (2) a

---

[3]    Corporation Counsel did not identify any additional NYPD officers who participated in the incident. (*See generally* ECF 57, Corporation Counsel Letter.)

statement that they were relying on the legal arguments in the brief in support of the motion to dismiss the AC plus, if they wished, a supplemental brief raising any additional arguments in support of dismissing the SAC; giving Plaintiff until September 3, 2024 to oppose Defendants' anticipated motion(s) to dismiss; and giving Defendants until September 17, 2024 to file reply briefs, if any, in further support of their anticipated motion(s) to dismiss. (*See* ECF 45, Order.)

On June 10, 2024, Plaintiff submitted a letter arguing that a motion to dismiss by Defendants should not be granted because no warrant was presented to her when the officers entered her apartment, even though the warrant issued by Judge Netburn was not a "no knock" warrant; and because Defendants should not be protected by the qualified immunity doctrine. (*See* ECF 58, Pl.'s Letter at 2.)

On June 12, 2024, Plaintiff filed a letter asserting that Defendants had improperly changed the title (from Detective to TFO) of Defendant Polichetti in order to argue that he acted as a federal officer rather than a NYPD officer. (*See* ECF 61, Pl.'s Letter.) In that letter, Plaintiff also informed the Court that, before she filed her original complaint, she had filed a motion challenging the forfeiture of approximately $50,000 in cash taken by Defendants from her apartment; she requested the Court to issue an order stating that her challenge to the seizure of funds was separate from this case and should be litigated on its own merits. (*See id.*) On June 25, 2024, I issued an order stating that if the case proceeded to discovery, Plaintiff would have a chance to inquire into whether Defendant Polichetti was a deputized federal TFO, and that if Plaintiff did not wish to seek the return of the cash in this action, she need not include any allegations relating to that issue in her SAC. (*See* ECF 62, Order.) On June 26, 2024,

6

Plaintiff submitted a letter asking for expedited treatment of her claim for return of $50,000 taken from her apartment. (*See* ECF 66, Pl.'s Letter.)

On June 27, 2024, Defendants Polichetti, Morris, Ortiz, Boccia, and Dooley filed their motion to dismiss. (*See* ECF 63, Mot. To Dismiss; ECF 64, Defs.' Memo. in Support.)

Also on June 27, 2024, Plaintiff filed a letter attaching her SAC; the SAC appeared on the docket on July 2, 2024. (*See* ECF 65, Pl.'s Letter; ECF 65-1, SAC.) Due to the delay in the SAC appearing on the docket, I issued an order giving Plaintiff until July 8, 2024 to file the SAC. (*See* ECF 67, Order.) On July 8, 2024, Plaintiff filed a supplemental addendum to the SAC. (*See* ECF 71, Letter Supplementing SAC.) On July 15, 2024, Plaintiff filed an opposition to Defendants' Motion To Dismiss (ECF 63). (*See* ECF 73, Pl.'s Opp.)

On August 2, 2024, as required by my July 9 order (ECF 68), Defendants Polichetti, Morris, Ortiz, Boccia, and Dooley filed a letter indicating that they elected to rely on the brief in support of the motion to dismiss the AC in seeking dismissal of the SAC; the newly served Defendants (Bonilla, Ames, Marte, Comesanas, and Ingram) indicated that they too wished to rely on that submission. (*See* ECF 75, Defs.' Letter.)

On August 12, 2024, Plaintiff filed a letter seeking the prompt return of the $50,000 taken from her apartment. (*See* ECF 76, Pl.'s Letter.) I held a telephonic status conference on August 26, 2024 to discuss Plaintiff's August 12, letter. (*See* ECF 79, Minute Entry.) On September 3, 2024, Plaintiff made a further submission in support of the return of the $50,000. (*See* ECF 80, Pl.'s Letter.) On September 24, 2024, I held a telephonic status conference to discuss Plaintiff's September 3 letter.

7

On September 10, 2024, I issued an order that incorrectly stated that Plaintiff had not filed an opposition to Defendants' motion to dismiss, which had been due on September 3, 2024; in fact, Plaintiff had filed the opposition early, on July 15, 2024 (ECF 74). I granted Plaintiff an extension of time to file opposition papers (*see* ECF 82, Order), and on September 17, 2024, Plaintiff filed another memorandum in opposition to Defendants' motion to dismiss that was substantially similar to her original opposition. (*See* ECF 83, Pl.'s Second Opp.)

On September 27, 2024, Defendants filed their reply brief in further support of the motion to dismiss along with a supporting declaration. (*See* ECF 84, Defs.'s Reply; ECF 85, Declaration of Francis H. DiCarlo in Supp. of Mot. To Dismiss ("Dicarlo Decl.").)

On October 7, 2024, Plaintiff, without having requested leave of the Court, filed a surreply in further opposition to the motion to dismiss, along with supporting affidavits. (*See* ECF 87, Pl.'s Surreply; ECF 88, Affidavit of Laverne McBryde O'Neal in Supp. of Surreply; ECF 89, Affidavit of Shamarie Knight in Supp. of Surreply.) On October 21, 2024, Defendants complained about Plaintiff's unauthorized filing (*see* ECF 90, Defs.' Letter), and I granted them leave to make a supplemental filing in response. (*See* ECF 91, Order.) On November 8, 2024, Defendants made their supplemental filing in further support of their motion to dismiss. (*See* ECF 92, Defs.' Supp. Reply.)

## **LEGAL FRAMEWORK ON A MOTION TO DISMISS**

Judgment on a Rule 12(b)(6) motion for "failure to state a claim upon which relief can be granted" is appropriate when the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court "must accept as true all of the allegations contained in a complaint," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In evaluating a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Extrinsic evidence may not be considered by the court, because "a Rule 12(b)(6) motion . . . challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). However, an exception exists for extrinsic documents that are "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a

---

[4]    Unless indicated otherwise, internal quotation marks, citations, and alterations are omitted from quotations.

dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Because Plaintiff is bringing this case pro se, I interpret all Plaintiff's filings to raise the strongest claims they may suggest. *See, e.g., Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006); *Harris v. Mills*, 572 F.3d 66, 72 (2d. Cir. 2009). In addition, where, as here, a plaintiff is pro se, the Court may consider facts raised for the first time in a brief in opposition to a motion to dismiss when evaluating the adequacy of the plaintiff's allegations. *See Simmons*, 2020 WL 5505366, at *2 n.2.

## SUBSTANTIVE LEGAL FRAMEWORK

The Supreme Court has recognized an implied cause of action to compensate a plaintiff for certain constitutional violations committed by federal officers in their individual capacities. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971); *see also Ziglar v. Abbasi*, 582 U.S. 120, 124-25 (2017); *Morrison v. United States*, No. 17-CV-6779 (WHP), 2019 WL 5295119, at *2 (S.D.N.Y. Oct. 18, 2019). Such a claim is called a *Bivens* claim. A *Bivens* claim has been recognized in three circumstances only, and only one such situation is potentially applicable here: the *Bivens* remedy may be available for unreasonable searches and seizures in violation of the Fourth Amendment. *See Bivens*, 403 U.S. at 397; *see also Morrison*, 2019 WL 5295119, at *2 (noting that *Bivens* makes damages claims available for unreasonable search and seizures violating the Fourth Amendment); *Walker v. Kin*, No. 18-CV-4090 (VEC) (SLC), 2020 WL 7685100, at *5 (S.D.N.Y. Apr. 24, 2020) (explaining the three recognized contexts for *Bivens* claims, including unreasonable searches and seizures in violation

of the Fourth Amendment), *report and recommendation adopted*, 2020 WL 7079421 (S.D.N.Y. Dec. 3, 2020).

The Supreme Court "disfavor[s]" expanding the *Bivens* remedy, and so a court evaluating a Bivens claim "must first decide whether the claim encompasses a cause of action that has been previously recognized, or whether the claim presents a new context." *Morrison*, 2019 WL 5295119, at *2 (quoting *Abbasi*, 582 U.S. at 138). A *Bivens* claim presents a new context "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at 138. If a *Bivens* claim arises in a new context, it will not be recognized if there are "special factors counselling hesitation in the absence of affirmative action by Congress," and "[i]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong": under those circumstances, "the courts must refrain from creating the remedy." *Id.* at 136-37. A court's ability to infer a new *Bivens* claim is also limited where "there is an alternative remedial structure in place." *Id.* at 137.

The Supreme Court had set out a "two-step framework" to determine whether a court should recognize a *Bivens* claim: assessing whether a plaintiff seeks damages in a new *Bivens* context," and if so, determining "whether there are special factors counselling hesitation in the absence of affirmative action by Congress." *Bueno Diaz v. Mercurio*, No. 19-CV-1319 (AT), 2020 WL 1082482, at *3 (S.D.N.Y. Mar. 5, 2020) (quoting *Abbasi*, 582 U.S. at 137). However, in *Egbert v. Boule*, 596 U.S. 492 (2022), the Supreme Court recognized that the two-step analysis "often resolved to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 483. The Supreme Court therefore

decided that "newness" of a *Bivens* claim is sufficient grounds for dismissal. *Id.*; *see also Vetcher v. Immigr. Customs Enf't Agents Grp. 1*, No. 18-CV-6798 (EK) (TAM), 2023 WL 6879594, at *6 (E.D.N.Y. Oct. 18, 2023) (noting that a *Bivens* claim may be new even where "the claim is based on the same constitutional provision [presenting] almost parallel circumstances, [involving] a similar mechanism of injury"). And the Second Circuit Court of Appeals has held that the existence of "any special factor," such as an alternative remedial structure, also supports dismissal of a *Bivens* claim. *See Cohen v. Trump*, No. 23-35, 2024 WL 20558, at *2 (2d Cir. Jan. 2, 2024).

In evaluating whether a *Bivens* claim arises in a new context, a court "must evaluate whether the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Bueno Diaz*, 2020 WL 1082482, at *3 (quoting *Abbasi*, 582 U.S. at 137). Factors that may be relevant to that assessment include: "the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 582 U.S. at 138. Analyzing the relevant factors, a court may conclude that a claim arises "in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa,* 589 U.S. 93, 103 (2020). The Second Circuit has acknowledged that *Abbasi* represents a "stringent new test for extending the *Bivens* cause of action to new contexts"; the bar for concluding that a claim falls outside an existing *Bivens* context is very low. *Gonzalez v. Hasty*, 755 F. App'x 67, 69 (2d Cir. 2018).

Where a *Bivens* claim may be recognized, its elements are "substantially similar to a claim under . . . § 1983 such that courts incorporate § 1983 case law into *Bivens* claims." *Lora v. City of N.Y.,* No. 14-CV-8121 (VEC), 2016 WL 4074433, at *8 n.7 (S.D.N.Y. July 29, 2016); *see also Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (per curiam) (noting "the similarity between suits under § 1983 and *Bivens*").

Civil liability is imposed under 42 U.S.C. § 1983 upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. *See* 42 U.S.C. § 1983. Section 1983 does not provide an independent source of substantive rights, but rather offers a method to vindicate federal rights conferred by statute or the Constitution. *See Graham v. Connor,* 490 U.S. 386, 393-94 (1979).

Even if a plaintiff alleges facts sufficient to state a claim for a constitutional violation, individual defendants may be shielded from liability due to qualified immunity. Qualified immunity "affords law enforcement officers a broad shield from claims for money damages arising from the performance of their duties." *Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017). The protection applies "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* If a plaintiff "cannot make the first showing, i.e., a violation of constitutional rights, no further inquiry is necessary because where there is no viable constitutional claim, defendants have no need of an immunity shield." *Id.* at 81. But even where constitutional injury is shown, the shield applies unless the plaintiff can also show that the right violated was "clearly established at the time of defendant's actions." *Id.*

To make the "clearly established" showing, a plaintiff need not identify a case directly on point, but there must be sufficiently clear precedent to have placed the constitutional question "beyond debate." *Id.* That determination is made "not from the perspective of courts or lawyers, but from that of a reasonable officer in the defendant's position" – a "deliberately forgiving" standard that gives public officials "breathing room to make reasonable but mistaken judgments without fear of disabling liability." *Id.* Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.*

## DISCUSSION

### I.   The Parties' Arguments

Defendants seek dismissal of the SAC pursuant to Rule 12(b)(6) on the grounds that (1) Plaintiff may not bring a *Bivens* claim here because of the availability of alternative remedies; (2) Plaintiff's *Bivens* claim is barred because it arises in a new context; (3) Plaintiff fails adequately to plead claims for violations of the Fourth, Eighth, or Fourteenth Amendments of the Constitution; and (4) even if Plaintiff could bring a *Bivens* claim and had adequately pleaded constitutional violations, the claims against Defendants would be barred by the qualified immunity doctrine. (*See* ECF 64, Defs.' Mem. in Support at 1-2.)

Plaintiff responds that the search of her home was effectively warrantless, because Defendants did not wait after knocking before entering and did show anyone the warrant to her before entry. (*See* ECF 73, Pl.'s Opp. at 2-3; ECF 83, Pl.'s Second Opp. at 2-3.) Plaintiff also argues that some Defendants were NYPD officers, and those Defendants entered the apartment before the federal agents (*see* ECF 73, Pl.'s Opp. at 3; ECF 83, Pl.'s Second Opp. at 3),

14

which I construe as an argument that Plaintiff may bring claims under 42 U.S.C. § 1983 as well

as *Bivens,* because the NYPD officer Defendants were acting under color of state law rather

than federal law. Plaintiff contends that her husband, whose alleged activities were the cause

of the search, does not live at the apartment and only receives mail there (*see* ECF 73, Pl.'s Opp.

at 3; ECF 83, Pl.'s Second Opp. at 3-4), which I construe as an argument challenging the validity

of the warrant. Plaintiff further contends that Defendants have misled the Court by failing to

provide a complete response to my *Valentin* orders. (*See* ECF 83, Pl.'s Second Opp. at 4.) And

Plaintiff asserts that Defendants are not entitled to qualified immunity, because their behavior

was unlawful. (*See* ECF 73, Pl.'s Opp. at 3-4; ECF 83, Pl.'s Second Opp. at 4.)

Defendants first argue that Plaintiff failed to respond to two dispositive arguments that

they advanced – that her *Bivens* claims are barred due to the availability of alternative remedies

and because her claims arise in a novel context – and that as a result, the Court should grant

Defendants' motion to dismiss on those grounds. (*See* ECF 84, Defs.' Mem. in Support at 6.)

Defendants counter Plaintiff's argument that they did not properly execute the warrant by

asserting that they complied with the minimal delay of about ten seconds that might be

required before entering; that even if they had not done so, entering immediately was justified

to prevent the destruction of contraband; and that there is no absolute requirement to show a

resident a warrant before entry. (*See id.* at 7-10.) Defendants contend that they did not violate

Plaintiff's constitutional rights by detaining her during the search because law enforcement

officers are permitted to detain individuals incident to a search. (*See id.* at 10-11.) Defendants

assert that, even though some of the officers were employed by the NYPD, all the officers

participating in the search had been deputized as federal task force members, and the search

was pursuant to a federal warrant, so that all Defendants were acting under color of federal and not state law. (*See id.* at 11-12.) And Defendants rebut Plaintiff's qualified immunity argument by asserting that none of the behavior alleged by Plaintiff constitutes a clear constitutional violation. (*See id.* at 12.)

Plaintiff states in her surreply that it is unseemly for an attorney for the United States to take the position that a pro se litigant's failure to respond to two legal arguments should lead the Court to dismiss her claims. (*See* ECF 87. Pl.'s Surreply at 2.) She goes on to argue that Defendants' position that they waited long enough before entering is contrary to fact and their position that they were not required to show her the warrant before entry is contrary to law. (*See id.*) Plaintiff contends that her mistreatment during her detainer violated her constitutional rights and that Defendants are not entitled to qualified immunity due to their unlawful behavior. (*See id.*) Finally, Plaintiff disputes Defendants' assertion that they were all deputized as federal task for members; she points out that some Defendants wore NYPD uniforms during the search. (*See id.* at 4.) Plaintiff also argued that she has a right to be free from "cruel and unusual treatment," referencing the Eighth Amendment. (*See id.* at 1.)

In response to Plaintiff's surreply, Defendants argue that the SAC fails to state a *Bivens* claim for violation of the Eighth Amendment because there is an alternative remedial structure in place and because the claim presents a novel context. (*See* ECF 92, Defs.'s Supp. Reply at 1-2.)

## II.    Plaintiff Is Not Limited To Bringing *Bivens* Claims and May Also Advance Claims Pursuant to 42 U.S.C. § 1983

I begin by addressing whether Plaintiff is limited to asserting *Bivens* claims or whether she may also advance claims pursuant to Section 1983.

Defendants contend Plaintiff is limited to suing under *Bivens,* because they are being sued under the Constitution for actions they took as federal officers executing a federal search warrant. (*See* ECF 64, Defs.' Memo. in Support at 9.) Plaintiff responds that some Defendants were NYPD officers rather than federal agents and that those Defendants acted under color of state law. (*See* ECF 73, Pl.'s Opp. at 1, 3.) Defendants counter that while some Defendants were NYPD officers, they had been deputized by the federal Drug Enforcement Agency ("DEA") and therefore were acting as federal officers during the incident. (*See* ECF 84, Defs.' Reply at 11-12.)

Defendants are correct that state and local officers who have been deputized to a federal task force act "under the color of federal, not state, law for the purposes of the activities carried out by the task force." *Escobar v. Correa*, No. 22-CV-08434 (MMG), 2024 WL 4042122, at *7 (S.D.N.Y. Sept. 4, 2024). That conclusion holds even where, unlike here, the deputized federal task force officer defendants' challenged conduct occurred while they were executing a state warrant rather than a federal warrant or were otherwise investigating a state law crime. *See id.*; *see also Pou v. U.S. Drug Enf't Admin.,* 923 F. Supp. 573, 576, 579 (S.D.N.Y. 1996) (concluding that a section 1983 claim against two deputized DEA task force agent defendants failed where it was undisputed that those defendants were acting in their capacity as federal officers).

17

In support of the position that Defendants were acting as deputized federal agents, Defendants submit an affidavit from an administrative employee of the DEA, who states he reviewed DEA records and attests to the status of Defendants Polichetti, Ortiz, Dooley, Bonilla, Comesanas, Marte, Ingram, and Ames as deputized federal task force officers and of Defendants Morris and Boccia as DEA agents. (*See* ECF 85, DiCarlo Decl. ¶¶ 3-5.) Defendants argue that the Court may consider the affidavit on a motion to dismiss, even over Plaintiff's dispute, because the Court may take judicial notice of "facts that are not subject to reasonable dispute" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (ECF 84, Defs.' Reply at 12 n.5 (quoting *Richardson v. N.Y.C. Bd. of Educ.,* 711 F. App'x 11, 13 (2d Cir. 2017) and *Paskar v. City of N.Y.*, 3 F. Supp. 3d 129, 134 (S.D.N.Y. 2014)).)

Defendants' position on this issue is unpersuasive and the cases Defendants cite are inapposite. *Richardson* indeed contains the quoted language, but the documents of which the Court took judicial notice were a city regulation and two collective bargaining agreements between the city and a teachers union, which documents were "public documents, promulgated by or binding on a government agency, and not subject to reasonable dispute, since their contents can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Richardson,* 711 F. App's at 13. *Paskar* stands for the proposition that "[o]fficial government reports and other types of government records are appropriate for judicial notice," and the case involved taking judicial notice of a manual published by the Environmental Protection Agency. *Paskar,* 3 F. Supp. 3d at 134. An affidavit by a government employee made for litigation purposes is not an official government report or a

government record; nor can the contents of such an affidavit be accurately and readily determined from reliable sources. Under the circumstances, I do not believe the question whether all Defendants were deputized federal agents can be determined at the motion to dismiss stage. Accordingly, I conclude that Plaintiff may advance claims under section 1983.

### III.    Plaintiff's *Bivens* Claims Are Barred

I turn next to Defendants' arguments that Plaintiff's *Bivens* claims are barred by the availability of alternative remedies and the novelty of the claims (*see* ECF 64, Defs.' Memo. in Support at 5-7). I reject Defendants' argument that Plaintiff's failure to respond to these arguments supports a ruling in Defendants' favor (*see* ECF 64, Defs.' Memo. in Support at 4-6). A failure to respond to an argument in support of a motion does not require the Court to grant the motion; instead, the Court considers the argument on the merits based on its understanding of the law. *See Brown v. Twitter, Automattic Inc.*, No. 19-CV-6328 (KPF), 2021 WL 3887611, at *4 (S.D.N.Y. Aug. 31, 2021) (considering unrebutted arguments raised by the defendant against the pro se plaintiff). But for the reasons set forth below, I nevertheless conclude that Plaintiff's *Bivens* claims should not be permitted to proceed.

### A.    Plaintiff's *Bivens* Claims Are Barred by the Availability of an Alternative Remedy

Plaintiff's *Bivens* claims cannot be recognized, because Congress has created at least one alternative remedial structure through which Plaintiff could seek redress for the alleged harms she suffered – the Federal Tort Claims Act ("FTCA").

The Supreme Court has held that a claim under *Bivens* for a Fourth Amendment violation by a federal law enforcement officer cannot be recognized when the plaintiff could

have brought claims under for the alleged constitutional harm under federal statutes. *See Egbert,* 596 U.S. at 487-98 (holding that a Fourth Amendment *Bivens* claim alleging excessive force by a Customs and Border Patrol agent was barred due to the availability of alternative remedies under a statute requiring the Secretary of Homeland Security to control, direct, and supervise Customs and Border Patrol employees and a regulation requiring Customs and Border Patrol to hear grievances and investigate violations of standards during law enforcement activities, even though the alternative remedies might not provide complete relief).

Plaintiff could have sought redress under the FTCA, which authorizes monetary damages for torts committed by federal employees in the course of their official duties. *See* 28 U.S.C. § 2679(b).[5] "[N]umerous courts in this district have found the FTCA to be an alternative remedy to *Bivens*," which bars a *Bivens* claim. *Bravo v. U.S. Marshals Serv*., 684 F. Supp. 3d 112, 126 (S.D.N.Y. 2023). As one such case explained, "the [*Abbasi*] court has made clear that the law no longer requires an explicit congressional declaration that persons injured . . . may not recover money damages from agents but must be remitted to another remedy, equally effective in the view of Congress." *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020) (finding the "existence of the FTCA as an alternative remedy qualifies as a special factor that counsels hesitation in extending *Bivens* to cover [the plaintiff's] claims"). I find this reasoning to be more

---

[5]     Before filing an FTCA action, a plaintiff must exhaust administrative remedies with the appropriate federal agency. *See Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019). This requirement is jurisdictional and cannot be waived. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). Specifically, a tort claim must be "presented" to the agency in writing "within two years after the claim accrues" or "within six months after the date the agency mails notice of final denial of the claim." *See* 28 U.S.C. §§ 2401(b), 2675(a).

persuasive than that of the handful of cases holding otherwise. *See Edwards v. Gizzi*, No. 20-CV-7371 (KMK), 2022 WL 309393, at *8-10 (S.D.N.Y. Feb. 2, 2022) (collecting cases).

I therefore respectfully recommend that Your Honor should dismiss Plaintiff's *Bivens* claims in light of the alternative remedy that was available to Plaintiff through the FTCA.[6]

B.        Plaintiff's *Bivens* Claims Are Barred Because They Arise in a New Context

In the event that Your Honor disagrees with my conclusion that Plaintiff's *Bivens* claims are barred by the availability of an alternative remedy through the FTCA, I address Defendants' argument that those claims should be dismissed because they arise in a new context. As noted above, the Supreme Court has held that novelty alone is a sufficient basis to deny a *Bivens* claim. *See Abbasi,* 528 U.S. at 139-40 (holding that a *Bivens* action does not lie where the case "differ[s] in a meaningful way from previous *Bivens* cases"). For the reasons set forth below, I agree with Defendants' position on this issue.

1.   Fourth Amendment

Plaintiff's Fourth Amendment claim is different from the claim in *Bivens* in that *Bivens* concerned a warrantless search and arrest, *see Bivens*, 403 U.S. at 389, while the search at issue here was pursuant to a warrant (*see* ECF 38-1, Search Warrant at 1-4). Defendants therefore were operating under a different legal mandate from the defendants in *Bivens*. *See Abbasi*, 582 U.S. at 140 (identifying a different statutory or legal mandate as a type of difference sufficient

---

[6]        I therefore do not address Defendants' argument that Plaintiff could have pursued relief under the Inspector General Act of 1978, which created processes that "allow individuals like [Plaintiff] to file misconduct reports against DEA [officers], which may then be investigated and remedied by the appropriate office," *Arias v. Herzon*, 680 F. Supp. 3d 61, 68 (D.N.H. 2023). *See also* 5 U.S.C. App. 3 § 8E(d).

to deny a *Bivens* claim). Courts routinely find claims based on searches pursuant to a warrant arise in a new context from acceptable Fourth Amendment *Bivens* claims. *See, e.g., Lewis v. Westfield,* 640 F. Supp. 3d 249, 253 54 (E.D.N.Y. 2022), *aff'd sub nom. Lewis v. Bartosh*, No. 22-3060-pr, 2023 WL 8613873 (2d Cir. 2023) (summary order); *Oliveras*, 440 F. Supp. 3d at 371-72; *Martinez v. D'Agata*, No. 16-CV-0044 (VB), 2019 WL 6895436, at \*7 (S.D.N.Y. Dec. 18, 2019). The same is true of Fourth Amendment *Bivens* claims based on mistreatment during a search and excessive force. *See, e.g., Edwards*, 2022 WL 309393, at \*5-6 (noting that Courts in this District routinely find claims for excessive force to present a new context for *Bivens* claims). I therefore respectfully recommend that Your Honor should dismiss Plaintiff's Fourth Amendment *Bivens* claims based on their novelty.

### 2.  Eighth Amendment

Plaintiff's Eighth Amendment claim similarly presents a novel context, which precludes Plaintiff from bringing such a claim under *Bivens.* The Supreme Court has recognized an Eighth Amendment cause of action under *Bivens* where a prison inmate died because prison officials failed to treat his medical condition. *See Carlson v. Green*, 446 U.S. 14, 16 (1980). Plaintiff's allegations here – that she was mistreated during the search of her home – are entirely different. Most significantly, she was never incarcerated. *See Mendoza v. Edge,* 615 F. Supp. 3d 163, 170 (E.D.N.Y. 2022) ("Courts have consistently found excessive force cases arising under either the Fifth or Eighth Amendment to present new *Bivens* contexts); *Oliveras*, 440 F. Supp. 3d 365, 369 (S.D.N.Y. 2020) (recognizing that the Supreme Court has cautioned against expanding *Bivens* claims under the Eighth Amendment beyond the facts in *Carlson*, which

22

involved the failure to provide medical services to an incarcerated individual). I therefore respectfully recommend that Plaintiff's *Bivens* claim predicated on an Eighth Amendment violation should be dismissed based on its novelty.

### 3. Fifth Amendment

Plaintiff's Fifth Amendment claim – that her property was destroyed during the search – would similarly fail because it arises in a novel context. The Supreme Court previously recognized a *Bivens* claim for violation of the Equal Protection Clause of the Fifth Amendment when a Congressman fired an administrative assistant based on her gender. *See Davis v. Passman*, 442 U.S. 228, 248-49 (1979). Plaintiff's claim is far removed from a claim for gender discrimination. *See, e.g., Nasiruddin v. Pliler*, No. 21-CV-7044 (CS), 2024 WL 2262664, at *10 (S.D.N.Y. May 17, 2024) ("Fifth Amendment claims concerning property damage or destruction are meaningfully different from the *Bivens* trilogy and clearly present[ ] new *Bivens* contexts").

### 4. Fourteenth Amendment

Plaintiff's *Bivens* claim under the Fourteenth Amendment also arises in a novel legal context. This claim differs "meaningful[ly]" from the claims in the three cases in which the Supreme Court found there was a *Bivens* claim; none of those claims involved the Fourteenth Amendment. *See Egbert*, 592 U.S. at 491 (noting that *Bivens* claims have been authorized only in certain Fourth, Fifth, and Eighth Amendment contexts); *see also Tyson v. Fed. Bureau of Investigation*, No. 22-CV-3555 (LTS), 2022 WL 1557000, at *2 (S.D.N.Y. May 16, 2022) (dismissing a Fourteenth Amendment claim against federal law enforcement officers because any "due process claim against federal agents, if such a *Bivens* claim would lie, would arise

23

under the Fifth Amendment, not the Fourteenth Amendment"). I therefore respectfully recommend that Your Honor should also dismiss Plaintiff's Fourteenth Amendment *Bivens* claim based on its novelty.

**IV.    All but One of Plaintiff's Claims Under 42 U.S.C. § 1983 for Violations of Her Rights Under the Fourth, Fifth, Fourteenth, and Eighth Amendments Should Be Dismissed**

Because I believe that Defendants cannot on a motion to dismiss demonstrate that they all were federal agents or deputized federal agents acting under color of federal law, I address whether the SAC adequately pleads claims pursuant to 42 U.S.C. § 1983. For the reasons set forth below, I conclude that it does in one instance only.

    A.    The SAC Adequately Pleads a Fourth Amendment Excessive Force Claim but Fails To State any Other Claims

        1. Fourth Amendment

The SAC states a claim under the Fourth Amendment only against Detective Polichetti for excessive force.

The "ultimate touchstone of the Fourth Amendment is reasonableness, which generally requires the obtaining of a judicial warrant to ensure that the inferences to support a search are drawn by a neutral and detached magistrate." *United States v. Lauria*, 70 F.4th 106, 120 (2d Cir. 2023). A search conducted pursuant to a warrant is "presumptively reasonable," and the presumption can be rebutted only pleading by alleging that the defendant "(1) knowingly and deliberately, or with a reckless disregard of the truth, procured the warrant, (2) based on false statements or material omissions, that (3) were necessary to the finding of probable cause." *Ganek*, 874 F.3d at 80-81.

24

Defendants argue that the SAC contains no allegations suggesting that the warrant was procured based on knowingly or recklessly false statements or material omissions. (*See* ECF 84, Defs.'s Reply at 2; ECF 65-1, SAC.) Plaintiff responds that her husband, whose activities were the reason for the search of her apartment, did not live with her. (*See* ECF 83, Pl.'s Second Opp. at 4.) I construe this argument as a challenge to the validity of the search warrant. However, Plaintiff cannot state a claim for a violation of the Fourth Amendment based on her assertion that her husband did not reside at the apartment for which the search warrant was issued.

The search warrant was not based on the premise that Plaintiff's husband lived at the apartment; the warrant was issued because, among other things, Plaintiff's husband had ordered a pill press and had it sent to the apartment, and he had been seen entering the apartment. (*See* ECF 38-1, Search Warrant at 9-10, 27). "[O]fficers executing a valid search warrant in a home have the limited authority to detain the occupants of the premises while a proper search is conducted," *Calderon v. City of N.Y.*, No. 14-CV-1082 (PAE), 2015 WL 2079405, at *9 (S.D.N.Y. May 4, 2015), even when the target of the search does not formally reside there. *See id.* (dismissing a Fourth Amendment section 1983 claim by a plaintiff who alleged that the target of the search did not live in the apartment because there was probable cause for issuing the warrant based in part on law enforcement officers' observations of the target entering the apartment).

Plaintiff also argues that she has adequately pleaded a Fourth Amendment violation by alleging that the officers who entered her apartment did not wait long enough after knocking and did not show her the warrant before entering. (*See* ECF 83, Pl.'s Second Opp. at 2-3.) Defendants counter that they were not required to wait more than ten seconds after knocking,

25

which they did, and even if they had not done so, the need to prevent destruction of contraband permitted them to enter immediately after knocking. (*See* ECF 84, Defs.'s Reply at 4-5.) And Defendants contend that there is no clear obligation to provide a resident with a copy of a warrant before entering her home. (*See id.* at 5-6.) Plaintiff responds that Defendants did not wait at all before entering the apartment, and she disputes their positions that Defendants were excused from doing so in light of the risk that contraband would be destroyed and that Defendants had no clear obligation to show her the warrant before entry. (*See* ECF 87, Pl.'s Surreply at 2-3.)

Plaintiff cannot state a Fourth Amendment claim based on a failure by Defendants to knock and properly announce themselves. The Fourth Amendment obligates law enforcement officers entering a dwelling to "knock on the door and announce their identity and purpose before attempting forcible entry," *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997), and officers must give an occupant reasonable time to respond to knocking, but the reasonable duration will "vary with the size of the establishment, perhaps five seconds to open a motel room door, or several minutes to move through a townhouse." *United States v. Banks*, 540 U.S. 31, 39-40 (2003) (upholding forcible entry after officers waited fifteen to twenty seconds due to potential destruction of evidence). Courts in the Second Circuit have generally found wait times of "more than ten seconds to be reasonable." *United States v. Joyce*, No. 22-3020, 2024 WL 1194367, at *2 (2d Cir. 2024).

Defendants are correct that the knock-and-announce rule is "flexible," *Richards*, 520 U.S. at 387, and it is inapplicable "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given." *Wilson v. Arkansas*, 514 U.S. 927, 936

26

(1995). The bar is "not high" for determining whether law enforcement officers had a sufficient basis to reasonably believe that there was a likelihood of evidence being destroyed if they waited to enter. *Richards*, 520 U.S. at 394. The presence of "easily disposable contraband without more" arguably constitutes a sufficient exigency to justify no-knock entry. *United States v. Tisdale*, 195 F.3d 70, 73 (2d Cir. 1999) – even when the search warrant does not explicitly authorize a "no-knock entry." *Banks*, 540 U.S. at 37. Accordingly, Plaintiff fails to state a claim based on the knock-and-announce rule, because Defendants had a sufficient basis to reasonably conclude that knocking and announcing themselves would "inhibit the effective investigation" of a crime alleged to involve easily disposable contraband, including pills containing fentanyl. *Richards*, 520 U.S. at 394; *see also Tisdale*, 195 F.3d at 73.

Plaintiff's citation to *Hudson v. Michigan,* 547 U.S. 586 (2006) (*see* ECF 87, Pl.'s Surreply at 2), does not support her argument. In *Hudson,* the government acknowledged that it had violated the knock-and-announce rule, and the only question before the Supreme Court was whether the inculpatory evidence gathered during the search should be suppressed. *Hudson,* 547 U.S. at 590. Defendants here do not admit that they violated the knock-and-announce rule, and the government's concession in *Hudson* does not demonstrate a violation under the facts of this case, where Defendants were reasonably concerned about readily disposable illegal drugs.

Plaintiff also fails to state claim for a Fourth Amendment violation based on Defendants' failure to show her the search warrant before executing it. The Second Circuit has held that a violation of Federal Rule of Criminal Procedure 41(f)(1)(C), which requires law enforcement officers to provide a copy of a warrant after seizing property, is not per se unconstitutional. *See*

27

*United States v. Burke,* 517 F.2d 377, 386-87 (2d Cir. 2015). Defendants are correct that this

holding, which addresses an explicit requirement of the Federal Rules of Criminal Procedure,

"strongly suggests that a failure to provide a warrant before entry – which is not required by

any Federal Rule – likewise is not per se unconstitutional." *Id.*

Nor has Plaintiff adequately pleaded a violation of her Fourth Amendment rights as a

result of Defendants' mistreatment of her during the search by keeping her standing outside

the apartment notwithstanding her complaints about her recent foot surgery (*see* ECF 83, Pl.'s

Second Opp. at 1); refusing to allow her to go to the bathroom, causing her to urinate on

herself (*see* ECF 71, Letter Supplementing SAC at 1-2); and allowing a police dog to defecate on

her rug, using her shirt to clean up the mess, and laughing about her distress (*see* ECF 83, Pl.'s

Second Opp. at 4.)[7]

To begin with, law enforcement officers "executing a search warrant are privileged to

detain individuals, even to the point of handcuffing them, while the search is carried out."

*Bancroft v. City of Mt. Vernon*, 672 F. Supp. 2d 391, 403 (S.D.N.Y. 2009); *see also Rutherford v.*

*City of Mt. Vernon,* 698 F. Supp. 3d 574, 599 (S.D.N.Y. 2023) (same); *B. v. City of N.Y.*, No. 14-CV-

---

[7]     The Court may accept as true new factual allegations made by a pro se party if the allegations do not contradict allegations in the original complaint. *See Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). Defendants assert that Plaintiff's new allegations about the incident with the police dog should be disregarded as inconsistent with her original complaint, in which they claim she said she was unable to see inside the apartment during the search. (*See* ECF 84, Defs.' Reply at 10 n.6.) I disagree. The original complaint alleges that Plaintiff was not present in her apartment during the search, not that she was unable to see what was going on inside; indeed, Plaintiff also alleged that a Ring camera recorded part of the search. (*See* ECF 1, Compl. at 5-6.) There is no inconsistency, and so I consider the allegation about the incident involving the police dog.

1021 (KAM) (PK), 2016 WL 4530455, at *9 (E.D.N.Y. Aug. 29, 2016) (same). As Defendants point out, the Supreme Court's decision in *Muehler v. Mena*, 544 U.S. 93 (2005), is instructive on this issue. *Mena* involved a section 1983 claim by a plaintiff who alleged that she had been unreasonably detained during a search of her father's house, where she also lived. *See id.* at 95. During the search, the officers pointed a submachine gun at the plaintiff, who was in her bed, and handcuffed her. *See id.* at 96. They kept her in handcuffs for two to three hours. *See id.* at 96, 100. The Supreme Court held that the plaintiff's treatment did not violate her rights under the Fourth Amendment, explaining that her detention during the search was "reasonable" because "a warrant existed to search [the residence] and she was an occupant of that address at the time of the search." *See id.*; *see also id.* at 111 (Stevens, J., concurring) (noting that the detainer was reasonable even though the plaintiff "was not suspected of any crime and was not a person targeted by the search warrant").

Plaintiff here does not allege that she was detained under circumstances that were more intrusive than the detention that was held valid in *Mena*: Plaintiff was never handcuffed and no officer pointed a gun at her. Even Defendants' failure to promptly take her to a bathroom, causing Plaintiff to urinate on herself, does not constitute a Fourth Amendment violation: courts have upheld the validity of police conduct in similar situations. *See, e.g.,* *Pascual v. Fernandez*, No. 11 CV-7075 (RWS), 2013 WL 474292, at *4 (S.D.N.Y. Jan. 29, 2013) (holding that "[t]he temporary deprivation of the right to use the toilet, in the absence of serious physical harm or risk of contamination, does not rise to the level of an objective constitutional violation"); *cf. Bancroft*, 672 F. Supp. 2d at 396-98, 403-04 (dismissing an unreasonable seizure claim under *Mena* in which male police officers mistakenly searched the

29

wrong apartment for firearms pursuant to a facially valid warrant and detained and handcuffed a female plaintiff in a state of partial undress). To be clear, the behavior alleged by Plaintiff is appalling, and Plaintiff is understandably distressed with the way she was treated. However, not every harm has a legal remedy, and under *Mena,* Plaintiff has not stated a claim for a Fourth Amendment violation.

Additionally, reading Plaintiff's pro se SAC to state the strongest claims it suggests, as I must, I consider whether Plaintiff may be able to state an excessive force claim under the Fourth Amendment pursuant to 42 U.S.C. § 1983. As this Court has explained:

> "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). A determination of reasonableness under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cir. 2001) (internal quotation marks omitted). "However, 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Phelps v. Szubinski*, 577 F. Supp. 2d 650, 661 (E.D.N.Y. 2008) (quoting *Graham*, 490 U.S. at 396) (alteration omitted). Evaluation "of a particular use of force must be . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S.

at 396; *see Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). In order "to sustain a claim for excessive force, the Plaintiff must establish through evidence that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable" and, consequently, that "the amount of force used was more than de minimis." *Rincon v. City of New York*, No. 03 CIV. 8276 (LAP), 2005 WL 646080, at *4 (S.D.N.Y. Mar. 21, 2005) (internal quotation marks omitted).

*Rattray v. Cadavid*, No. 17-CV-8560 (PGG), 2019 WL 10945334, at *7 (S.D.N.Y. Sept. 10, 2019) (finding that the plaintiff had failed to allege facts sufficient to state a claim for excessive force where he did not claim to have suffered any physical injury); *see also Petway v. City of N.Y.*, No. 12-CV-0279 (ARR) (LB), 2014 WL 839931, at *8 (E.D.N.Y. Mar. 4, 2014) ("Plaintiff himself admits that [the defendant] gave him a 'slight shove' causing him no pain or injury and requiring no medical treatment, and such amount of force cannot be considered excessive."); *Husbands ex rel. Forde v. City of N.Y.*, No. 05-CV-9252 (NRB), 2007 WL 2454106, at *13-14 (S.D.N.Y. Aug. 16, 2007) (finding no excessive force where the officer pushed the plaintiff away from arrest scene and the plaintiff did not fall or suffer any injury); *Roundtree v. City of N.Y.*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) ("[T]o conclude that a 'push' that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that any physical contact by an arresting officer with an arrested person is actionable.").

Whether the constitutional line has been crossed depends on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing

31

harm." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033 (1973). When a plaintiff suffers only a de minimis injury, it is difficult for the plaintiff to establish that the force used was excessive. *See Yang Feng Zhao v. City of N.Y.,* 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009); *see also Usavage v. Port Auth. of N.Y. & N.J.,* 932 F. Supp. 2d 575, 591 (S.D.N.Y. 2013) ("A de minimis use of force will rarely suffice to state a Constitutional claim.") However, a plaintiff need not seek medical treatment to state an excessive force claim. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987).

Plaintiff alleges that after she asked Defendant Polichetti who he was and how he had gotten into her apartment, he "violently shoved her into the hallway," causing injury to her "shoulder, back, and left foot." (ECF 87, Pl.'s Surreply at 1.) Affording Plaintiff all reasonable inferences, as I must, I conclude that the facts alleged by Plaintiff could support a conclusion that no force was necessary; that the force used was out of proportion to the situation; that the harm was sufficient for a constitutional violation; and that the purpose was not to maintain or restore discipline, *see Johnson,* 481 F.2d at 1033. Put another way, I believe that Plaintiff has alleged facts sufficient to support a conclusion that Polichetti's use of force was objectively unreasonable under the circumstances. Because an excessive force claim may only be brought against a defendant who was personally involved in using excessive force or a defendant official who failed to intervene to prevent such a use of force by another official actor, *see Lopez-Motherway v. City of Long Beach,* No. 20-CV-5652 (BMC), 2021 WL 965158, at *3 (E.D.N.Y. Mar. 15, 2021), such a claim would pertain only to Defendant Polichtetti.[8]

---

[8]     Plaintiff alleges in her Complaint that Defendant Polichetti was the first Defendant into her apartment; that he shoved her; and that additional plainclothes officers "then" entered the

Plaintiff also seems to be claiming that Defendants unnecessarily damaged her property during the search. In particular, she claims that the police dog defecated on her rug and that Defendants used a costly shirt to clean up the excrement. (*See* ECF 83, Pl.'s Second Opp. at 4.) The Second Circuit has held that "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *U.S. v. Howard*, 489 F.3d 484, 497 (2d Cir. 2007) (quoting *United States v. Ramirez*, 523 U.S. 65, 71 (1998)).

To adequately plead a Fourth Amendment claim for destruction of property, a plaintiff must allege facts supporting a conclusion "that the officers' actions were unreasonable or malicious, and that more than ordinary disarray and damage incident to the execution of the warrant or search occurred." *Jackson ex rel. Jackson v. Suffolk County*, 8 F. Supp. 3d 386, 401 (E.D.N.Y. 2015). "Some property damage caused during a lawful search is not per se unreasonable within the meaning of the Fourth Amendment . . . ." *Id.* at 401-02; *see also Stegemann v. Rensselaer Cnty. Sheriff's Off.*, No. 15-CV-21 (TJM) (CFH), 2017 WL 4350517, at *2 (N.D.N.Y. Apr. 17, 2017) (finding that the court could not assess at the initial review stage the reasonableness of the level of damage resulting from the search), *report and recommendation adopted,* 2017 WL 2628872 (N.D.N.Y. June 16, 2017). Here, Plaintiff alleges that a police dog defecated on her rug, without specifying whether the rug was damaged as a result; that

---

apartment and "were there for about 20 minutes before 10 DEA agents announced that they were about to enter." (ECF 1, Compl. at 5.) Plaintiff has never suggested that any other Defendant was with Polichetti when he shoved her or could have prevented him from doing so; any such allegation would appear to be inconsistent with the allegation that Polichetti shoved Plaintiff before any other plainclothes officers entered the apartment.

Defendants used one of her expensive shirts to clean up the mess; and that Defendants laughed about the situation. (*See* ECF 83, Pl.'s Second Opp. at 4.) Defendants presumably did not cause the dog to defecate on the rug; at issue is whether their response was unreasonable or malicious. Certainly, using an item of Plaintiff's clothing to pick up the fecal matter reflected poor judgment, and laughing at the situation could suggest maliciousness. However, I cannot conclude that this behavior rises to the level of a constitutional violation. *See Kirkland v. City of N.Y.*, No. 06-CV-0331 (NG) (CLP), 2007 WL 1541367, at *7 (E.D.N.Y. May 25, 2007) (finding that the "limited to damage to an antique table, the front door, door frame, and the wall near the door" was nothing "more than ordinary disarray incident to the execution of the warrant" and that there was no basis to conclude "that the officers' actions were malicious or unreasonable, given their reliance upon a valid search warrant").

> 2.  Eighth Amendment

The SAC fails to state a claim for violation of the Eighth Amendment. "It is well-settled that the Eighth Amendment is the "primary source of substantive protection to convicted prisoners . . . , where the deliberate use of force is challenged as excessive and unjustified." *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 539 (S.D.N.Y. 2005). Plaintiff does not allege that she is or was incarcerated, and she therefore has no Eighth Amendment claim. *See Bies v. County of Nassau*, No. 17-CV-3354 (JMA) (ARL), 2020 WL 3051455, at *2 (E.D.N.Y. June 8, 2020) ("[D]istrict courts in the Second Circuit have found that those who are not incarcerated or institutionalized cannot bring an Eighth Amendment claim.").

### 3. Fifth Amendment

The SAC fails to state a claim for a Fifth Amendment violation. While the Fifth

Amendment protects against destruction of property, *see Salemo v. Murphy*, No. 11-CV-2525

(TPG), 2014 WL 804029, at *3-4 (S.D.N.Y. Feb. 28, 2014), Plaintiff's claims for property damage

during the search are covered by her Fourth Amendment claims, and she cannot bring "those

same injuries under the Fifth Amendment." *Cane v. New Britain Police Dep't*, No. 16-CV-1638

(SRU), 2017 WL 752278, at *4 (D. Conn. Feb. 27, 2017) (citing *Albright v. Oliver*, 510 U.S. 266,

274-75 (1994)).

### 4. Fourteenth Amendment

The SAC fails to state a claim for violation of the Fourteenth Amendment, because

Plaintiff's claim that she was denied equal protection of the law based on Defendants' actions

during the search is duplicative of her claims under the Fourth Amendment. The Supreme Court

has explained that, while "a number of the procedural protections contained in the Bill of Rights

were made applicable to the States by the Fourteenth Amendment," *Oliver*, 510 U.S. at 272,

when "a particular Amendment provides an explicit textual source of constitutional protection

against a particular sort of government behavior, that Amendment, not the more generalized

notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 273. In

the context of section 1983 cases, if a plaintiff's claim under the Fourteenth Amendment

primarily concerns an unreasonable search and seizure, the Fourth Amendment usually

governs. *See, e.g.*, *Cucuta v. New York City*, 25 F. Supp. 3d 400, 417-18 (S.D.N.Y. 2014) (holding

that Fourth rather than Fourteenth Amendment provided the "proper analytical framework" for the plaintiff's claim of illegal search and seizure).

B.    Defendants Are Entitled to Qualified Immunity for All but One Claim

I also address Defendants' qualified immunity defense. For the reasons set forth below, I conclude that all but one of Plaintiff's claims would be barred by qualified immunity.

Under the qualified immunity doctrine, even when a plaintiff adequately alleges a constitutional injury, individual defendants are protected from liability unless the plaintiff can demonstrate that the right violated was "clearly established at the time of defendant's actions." *Ganek*, 874 F.3d at 81. It is not sufficient, as Plaintiff argues, for the alleged conduct to have been unlawful. While a plaintiff need not identify a case directly on point to demonstrate that a constitutional right was clearly established, there must be sufficiently clear precedent to have placed the constitutional question "beyond debate." *Id.* Other than in connection with her excessive force claim, Plaintiff has not established that it was "beyond debate" that Defendants violated her constitutional rights or that it was objectively unreasonable for Defendants to believe their actions were lawful. As a result, Defendants are shielded from liability under the qualified immunity doctrine in connection with each of her claims except her Fourth Amendment excessive force claim. I address the question of qualified immunity only in connection with the Fourth and Eighth Amendments in light of the caselaw indicating that Plaintiff's Fifth and Fourteenth Amendment claims would be subsumed by her Fourth Amendment claims.

### 1. Fourth Amendment

As to the claimed Fourth Amendment violations, it is not "beyond debate" that issuing a search warrant for Plaintiff's apartment based on the suspected activities of Plaintiff's husband when he did not live there was unlawful. To the contrary, *Calderon* strongly suggests that there can be probable cause to search a residence even when the target of the search does not formally live there. *See Calderon,* 2015 WL 2079405, at *9.

Nor is it clear that Defendants' entry into Plaintiff's apartment without waiting long enough after knocking was unlawful. As the Supreme Court has observed, "[I]it is not easy to determine precisely what officers must do" when the knock-and-announce rule applies. *Hudson*, 547 U.S. at 590. The "reasonable wait time" standard is "necessarily vague." *Id.* In light of this guidance, it cannot be said that Defendants violated clearly established law by knocking, ringing the doorbell, unlocking the front door of Plaintiff's apartment and entering. A reasonable officer in Defendants' position could not have been certain "[h]ow many seconds' wait [were] too few," *Hudson*, 547 U.S. at 590, particularly since the purpose of the search was to determine whether easily disposable illegal drugs were stored in the apartment. Thus, qualified immunity protects Defendants from liability for any violation of the knock-and-announce rule.

Plaintiff cannot show that Defendants violated clearly established law by failing to present the search warrant before executing it. As one Court in this District has noted, the case law is "uncertain" at best as to whether a search warrant must be presented to a resident before execution of the warrant. *Shaheed v. City of N.Y.,* 287 F. Supp. 3d 438 (S.D.N.Y. 2018)

(noting the absence of caselaw to support a Fourth Amendment claim based on failure to produce a warrant prior to a search and the Supreme Court's express reservation of judgment on this issue). As a result, qualified immunity protects Defendants from liability under the Fourth Amendment for failing to show Plaintiff the warrant before entering her home.

Plaintiff also cannot demonstrate that Defendants violated clearly established rights by keeping her outside the apartment during the search. Defendants' actions during the search were less intrusive than actions upheld in *Mena.,* 544 U.S. at 95, 102. Accordingly, qualified immunity bars claims based on Defendants' mistreatment of Plaintiff during the search. Nor is it evident that the way Defendants handled the dog's soiling of Plaintiff's rug rises to the level of a constitutional violation. *See Bender v. Alvarez*, No. 06-CV-3378 (CBA) (LB), 2009 WL 112716, at *7 (E.D.N.Y. Jan. 16, 2009) ("[T]here must be an allegation that officers' actions were unreasonable or malicious, and that more than . . . damage incident to the execution of the warrant occurred" to overcome qualified immunity.).

The one Fourth Amendment claim that I believe survives a qualified immunity challenge is the claim that Defendant Polichetti used excessive force on Plaintiff by gratuitously and violently shoving her into the hallway, causing her injury. In the excessive force context, "the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir. 1995). Because the clearly established Fourth Amendment excessive force inquiry also depends on a determination of objective reasonableness, "it appears that at least in some excessive force cases the . . . analysis ultimately converge[s] on one question: Whether in the particular circumstances faced by the

officer, a reasonable officer would believe that the force employed was lawful." *Cowan ex rel. Estate of Cooper v. Breen,* 352 F.3d 756, 764 n.4 (2d Cir. 2003); *see also Washpon v. Parr,* 561 F. Supp. 2d 394, 407-08 ("Since the law in this area is well-established, in Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits.").

### 2. Eighth Amendment

As with most of Plaintiff's Fourth Amendment claims, her Eighth Amendment claim also fails on qualified immunity grounds even if she has stated a claim for an Eighth Amendment violation. It is far from clear that a non-prisoner could be protected under the Eighth Amendment. *See Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) ("The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials.").

## V.    Plaintiff's Claim for Return of the Seized Cash

Plaintiff also asks the Court to order the return of approximately $50,000 in cash seized by Defendants during the search. (*See* ECF 83, Pl.'s Second Opp. at 2.) Plaintiff argues that the case was her retirement savings and did not belong to her husband. (*See* ECF 65-1, SAC at 6.) On January 10, 2025, I held a conference to discuss Plaintiff's request for the return of the cash.

By way of background, the Comprehensive Drug Abuse Prevention and Control Act permits the government to seize and forfeit items furnished or intended to be furnished in exchange for a controlled substance. *See* Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 801. If the value of seized property is less than $500,000, the DEA may follow the forfeiture process governed by customs laws. *See* 19 U.S.C. § 1607. The DEA must send

written notice to all claimants with an interest in the seized property no more than 60 days after the seizure and must publish notice of the seizure and the intent to forfeit property administratively. *See* 28 C.F.R. § 8.9(c)(1). The specific procedures are set out in 28 C.F.R. Ch. I, Pt. 8.

Once the DEA has begun the administrative forfeiture process and sent notice to interested parties, there are two ways to recover property: filing a timely and valid claim or filing a petition for remission or mitigation of forfeiture. *See* 28 C.F.R. § 8.10(a); 28 C.F.R. § 8.14 (b). A claimant may not seek return of the property through both mechanisms using the same document. *See United States v. Sanchez,* No. 08-CR-789 (RJS), 2015 WL 13450034, at *2 (S.D.N.Y. May 4, 2015); *Malladi Drugs & Pharms., Ltd. v. Tandy,* 538 F. Supp. 2d 162, 169 (D.D.C. 2008), *aff'd on other grounds*, 552 F.3d 885 (D.C. Cir. 2009).

The Second Circuit has ruled that once the government properly commences a civil forfeiture proceeding, it is "the prerogative of the claimant to choose the forum of adjudication*." U.S. (Drug Enf't Agency) v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835*, 972 F.2d 472, 479 (2d Cir. 1992). Both procedures provide "the opportunity to test the legality of the seizure in the forfeiture proceeding." *Id.* "A Claim challenges the validity of the procedure"; "by filing a Petition, the petitioner admits the validity of the seizure but requests relief due to mitigating circumstances." *Cohen-Sanchez v. U.S. ex rel. Drug Enf't Admin.,* No. 11-CV-6578, 2012 WL 1150760, at *3 (D.N.J. Apr. 5, 2012). If a party chooses not to file a claim and to proceed instead with a petition for remission, "the district court loses subject matter jurisdiction to adjudicate the matter," *One 1987 Jeep Wrangler*, 972 F.2d at 479*,* and has jurisdiction under 18 U.S.C. § 983(e) only to consider whether the party

had notice of the administrative forfeiture proceedings. *See Onwubiko v. United States,* 969 F.2d 1392, 1398 (2d Cir. 1992), *overruled on other grounds by Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 651 (2d Cir. 1998).

To file a claim, an interested party must state under oath that the seized property belongs to the claimant and must explain what the property is; once a claim is submitted, the administrative forfeiture proceedings stops and the claim is transferred to the U.S. Attorney's Office, which must then initiate a judicial forfeiture action in federal court within 90 days or return the seized property. *See* 28 C.F.R. § 8.10(b); 28 C.F.R. § 8.10(e). In a judicial forfeiture case, the government bears the burden of proof. *See* 18 U.S.C. § 983(c)(1).

A party may seek remission by filing a petition within 30 days of receipt of notice of the seizure. *See* 28 C.F.R. § 9.3. The petition must include proof of the party's interest in the property and state the facts and circumstances justifying remission or mitigation of the forfeiture. *See* 28 C.F.R. § 9.3(c)(2). Once a petition is received, the DEA investigates its merits, reviews the merits, and has broad discretion to grant or deny the petition. *See* 28 C.F.R. § 9.3(f). If petition is denied, the petitioner is notified of the reasons and of the right to submit a request for reconsideration. *See* 28 C.F.R. § 9.3(i).

At the conference, Defendants' counsel represented that the cash had been administratively forfeited. On February 21, 2023, fewer than 60 days after the cash was seized on January 4, 2023, notice was sent to both Plaintiff and her husband, explaining that a party claiming an interest in the cash could seek its return by filing a claim with the DEA or by filing a petition for remission; the DEA also made the required publication. Counsel represented that Plaintiff submitted a petition for remission that was received by the DEA on March 15, 2023; in

41

making her submission, Plaintiff used a form that was clearly labelled on the top as a "petition for remission."

Counsel represented that on November 24, 2023, the DEA sent a letter by certified mail to Plaintiff denying the petition for remission. The DEA did not receive a return receipt. However, the DEA checked usps.gov, which stated that the letter had been delivered on November 27, 2023. The November 24, 2023 letter denying the petition for remission explicitly stated that Plaintiff could request reconsideration of the decision and that any such request must be postmarked or received by the DEA within ten days of Plaintiff's receipt of the letter denying the petition. The DEA did not receive a request for reconsideration from Plaintiff.

Plaintiff acknowledged at the conference that she had received the letter denying return of the cash. She said she made repeated efforts to contact the DEA by telephone but was unable to reach anyone in November 2023. She stated that she disagreed with the DEA's rationale for the forfeiture – that the cash had been found in close proximity to drug paraphernalia – because in a small apartment like hers, everything is in close proximity to everything else.

Because Plaintiff filed a petition for remission, this Court has jurisdiction only to determine whether Plaintiff received proper notice of the administrative forfeiture. *See Onwubiko,* 969 F.2d at 1398. Based on the discussion at the conference, I conclude that there is no dispute that Plaintiff received notice of the forfeiture proceeding – otherwise, she would not have filed a petition for remission. I therefore conclude that this Court lacks jurisdiction to

consider a claim for return of the seized cash, and so I respectfully recommend that, to the extent that the SAC states such a claim, Defendants' motion to dismiss should be GRANTED.[9]

## VI.    Leave To Amend

Plaintiff does not request leave to amend, and the Court is not obligated to grant leave to amend sua sponte. *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F. App'x 472, 474 (2d Cir. 2009) (holding, where the plaintiff did not seek leave to amend in opposition to the motion to dismiss, that the district court did not abuse its discretion by failing to grant him such leave sua sponte). Moreover, a "plaintiff need not be given leave to amend" where, as here, she "fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *Moniodes v. Autonomy Cap. (Jersey) LP*, No. 20-CV-5648 (GHW), 2021 WL 3605385, at *8 (S.D.N.Y. Aug. 11, 2021).

"In this circuit, [i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Leneau v. Ponte*, No. 16-CV-0776 (GHW), 2018 WL 566456, at *18 (S.D.N.Y. Jan. 25, 2018) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). "[A] pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that [she] has a valid claim." *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir. 2000). "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal

---

[9]    I requested that counsel look into whether the DEA would consider a late request by Plaintiff for reconsideration of the denial of her petition for remission. He said he would do so, and on January 21, 2025, he submitted a letter on the docket stating that Plaintiff does not have a route to seek reconsideration because "the DEA does not have a procedure for considering an untimely request for reconsideration of a denial of a petition for remission." (ECF 95, Defs.' Letter at 1.)

reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010). Plaintiff has "not yet had the benefit of a decision of the Court explaining the pleading standards necessary for [her] claims to survive a motion to dismiss." *Al-Haj v. Akuamoah*, No. 19-CV-6072 (LJL), 2021 WL 964211, at *5 (S.D.N.Y. Mar. 15, 2021). Of course, "leave to amend a complaint may be denied when amendment would be futile." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Tocker v. Philip Morris Cos*., 470 F.3d 481, 491 (2d Cir. 2006)); *see also Moniodes*, 2021 WL 3605385, at *8.

I believe that it would be futile for Plaintiff to replead her *Bivins* claims, because those claims are barred in light of the availability of an alternative remedy in the FTCA and due to the novel contexts in which her *Bivens* claims arise; accordingly, her *Bivens* claims and all claims against the DEA agent Defendants, Morris and Boccia, should be dismissed with prejudice.

I also believe that it would be futile for Plaintiff to replead her claims under 42 U.S.C. § 1983 for Fourth Amendment violations alleging that Defendants illegally entered her home based on an improperly issued warrant, without waiting after knocking and without showing her the warrant; that Defendants mistreated her during the search; and that Defendants damaged her property incident to the search: even if Plaintiff could plead constitutional violations based on these allegations (and I do not believe that she can), the law is insufficiently clear, so that the claims would fail under the qualified immunity doctrine. For similar reasons, it would be futile for Plaintiff to replead section 1983 claims based: on an Eighth Amendment violation, because she was not incarcerated; on a Fifth Amendment violation, because any claims for property damage during the search would be covered by the Fourth Amendment if at

44

all; and on a Fourteenth Amendment violation, because any such claims would be covered, if at all, by the Fourth Amendment.

Finally, based on the information presented by the parties at the January 10, 2025 conference, it would be futile for Plaintiff to replead her claim challenging the forfeiture of the cash seized from the apartment.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion to dismiss be GRANTED IN PART and DENIED IN PART, as follows:

- Plaintiff's claims against Defendants Morris and Boccia, who are both DEA agents, should be dismissed with prejudice, which means without leave to replead;

- Plaintiff's claims against Defendants Ortiz, Dooley, Bonilla, Ames, Marte, Comesanas, and Ingram, who are all NYPD officers, should be dismissed with prejudice, which means without leave to replead;

- Plaintiff's excessive force claim against Defendant Polichetti under the Fourth Amendment and 42 U.S.C. § 1983 should not be dismissed, but all other claims against him should be dismissed with prejudice, which means without leave to replead; and

- Plaintiff's claims seeking to challenge the forfeiture of the cash seized from
  Plaintiff's apartment should be dismissed with prejudice, which means without
  leave to replead.

DATED:  January 30, 2025
        New York, New York

                                          Respectfully Submitted,

                                          **ROBYN F. TARNOFSKY**
                                          United States Magistrate Judge

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Cronan.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140 (1985).