UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

LaVERNE A. McBRYDE-O'NEAL,

          Plaintiff,          New York, N.Y.

          v.          23 Civ. 10113 (JPC)

TASK FORCE OFFICER DINOL
POLICHETTI #7182, *et al.,*

          Defendants.

------------------------------x     Remote Conference

                                 January 10, 2025

Before:

               HON. ROBYN F. TARNOFSKY,

                         Magistrate Judge

APPEARANCES

LaVERNE A. McBRYDE-O'NEAL
    Pro Se Plaintiff

EDWARD Y. KIM
    Acting United States Attorney for
    the Southern District of New York
BY:  JEREMY LISS
    Assistant United States Attorney

THE DEPUTY CLERK:  23cv10113, McBryde-O'Neal v. Polichetti.

Counsel, please state your appearance for the record, starting with Ms. McBryde-O'Neal.

MS. McBRYDE-O'NEAL:  Good morning.  LaVerne McBryde-O'Neal.

THE COURT:  Good morning.

MR. LISS:  Hi.  Jeremy Liss from the U.S. Attorney's office representing the individual defendants.

THE COURT:  Good morning.

And if you could just speak up a little bit, I'm having a little trouble hearing you, Mr. Liss.

MR. LISS:  Sure.  I will move my phone closer.

THE COURT:  Thank you.

Okay.  So thank you for being here.  You saw my order, and you saw I had some questions for the government.

I hope, Mr. Liss, that you have answers for some of them -- or all of them would be ideal.

MR. LISS:  Yes, I do.

I'm happy, of course, to address the Court's questions on the forfeiture of plaintiff's assets.  Preliminarily, though, I just will note that presently the United States is not a party to this action and that we would take the position that there's no *Bivens* action against the individual defendants for the return of their money.

But all that being said, I have, of course, looked into the questions that you asked, and I'm prepared to give answers.

THE COURT:  Okay.

MR. LISS:  So before I get into the facts of the forfeiture of plaintiff's cash, I just want to provide some legal context on how the DEA's administrative asset forfeiture process works.

So in 1970, Congress passed what's called the Comprehensive Drug Abuse Prevention and Control Act.  And that statutory regime permits the government to seize and forfeit any item of value that's furnished or intended to be furnished in exchange for a controlled substance.  And if the value of the seized property is less than $500,000, which is the case here, the DEA may follow an administrative forfeiture process that's governed by the customs laws.

And, you know, for that process, the seizing agency has to send written notice to all known claimants with an interest in the seized property.  And it also has to publish notice of the seizure and its intent to forfeit the property administratively.

You know, as relevant here, 18 U.S.C. 983(a) provides that the government is required to send written notice to interested parties no more than 60 days after the date of the seizure, and there are specific procedures provided for under

28 CFR Part 8.

So once the DEA has begun its administrative asset forfeiture process and sent notice to potentially interested parties, there are two alternate procedures by which a person can recover the property that's been seized.  So one is filing a timely, valid claim with the seizing agency; and two is filing a petition for remission or mitigation of forfeiture with the seizing agency.  And there are some very important differences between these two procedures.

So to file a claim, the party must submit to the seizing agency within the deadline set forth in the notice of seizure what's called a claim.  It doesn't have to be in any particular form, but it has to state under oath that the property being claimed in fact belongs to that claimant and explain, like, what the property is.

Once a timely claim is submitted, the administrative forfeiture proceeding stops and the claim is transferred to the U.S. Attorney's office, which must initiate a judicial forfeiture action in a federal District Court within 90 days or return the seized property.  And then there will be a subsequent judicial forfeiture case where the government bears the burden of proof.

By contrast, if a party fails to file a timely valid claim, the property is considered administratively forfeited. So that is one means of trying to get back property that's been

seized: filing a claim.

But there's an alternate procedure which is known as a petition for remission or mitigation.  A party may seek remission by filing a petition within 30 days of receipt of notice of the seizure.  And for that I point you to 28 CFR Section 9.3.  The petition must include proof of the party's interest in the property and state the facts and circumstances justifying remission or mitigation of the forfeiture.

Once the petition is received, the seizing agency, through its ruling official, investigates its merits and then reviews those merits and has broad discretion on whether to grant the petition.  If the ruling official denies the petition, the petitioner is notified of those reasons and is given -- is notified of the right to submit a request for reconsideration.

So a claim and a petition for remission, those are the two procedures by which a person can recover property seized for forfeiture.

Now, crucially, the Second Circuit has ruled that once the government properly commences a civil forfeiture proceeding, it is, quote, "the prerogative of the claimant to choose the form of adjudication," end quote.  And that's *U.S. Drug Enforcement Agency v. One 1987 Jeep Wrangler Auto*, 972 F.2d 472, pages 479-80.  And it's a case from 1992.

And again, quoting the Second Circuit decision, both

of these procedures——the claim or the petition for remission——are, quote, "the opportunity to test the legality of the seizure" -- provide, quote, "the opportunity to test the legality of the seizure in the forfeiture proceeding," end quote.

And so if a party chooses not to file a claim and to proceed with a petition for remission instead, again quoting the same decision, quote, "the District Court loses subject matter jurisdiction to adjudicate the matter in a peripheral setting," end quote.  And, you know, once something has been administratively forfeited and there's been no claim, the District Court only has jurisdiction under 18 U.S.C. 983(e) to consider whether the party had notice of administrative forfeiture proceedings.  And that's it.  The only thing that can be challenged at that point would be whether there was notice provided.

And one last important legal point I just want to make before turning to the facts here; a party cannot use the same document to make both a claim and a petition for omission. There are quite a few Courts still holding, and so just to provide a few case cites:

One is *United States v. Sanchez*, 2015 WL 13450034 at *2.  That's an SDNY case decision from May 4, 2015.

Another decision is *Cohen-Sanchez v. U.S. ex rel. Drug Enforcement Administration*.  And that's a District of New

Jersey case from April 5, 2012. And the reporter for that is 2012 WL 1150760.

And then the last case I would cite for that is *Malladi Drugs & Pharmacies v. Tandy*, 538 F.Supp.2d 162. And that's a District of D.C. case from 2008 that was affirmed on other grounds by the D.C. Circuit.

And as multiple Courts have explained—and now I'm quoting from the *Cohen-Sanchez* case—a, quote, "claim challenges the validity of the seizure," end quote. But by contrast, quote, "by filing a petition, the petitioner admits the validity of the seizure, but requests relief due to mitigating circumstances," end quote. So that's a legal framework for understanding what happened here.

So in this case, plaintiff's cash was properly administratively forfeited. So first of all, you know, notice was timely provided to her. The cash was seized in early January of 2023, and notice was sent out on February 21, 2023, which was less than 60 days. And notice was sent both to Dexter Washington, her husband, and also to plaintiff. That notice explained the two procedures for getting the cash back; both the procedure of a claim and both the procedure of a petition for remission. And the notice stated that the deadline to file a claim was March 28, 2023. And it stated, quote, "If you do not file a claim, you will waive your right to contest the forfeiture of the asset," end quote.

In addition to sending those notices to plaintiff and her husband, the DEA also posted written notice on forfeiture.gov for a consecutive 30-day period from March 6, 2023 to April 4 of that year.

Now, we certainly know here that plaintiff did receive the notice because she submitted a petition for remission that was received by the DEA on March 15, 2023. There's no question that this was a petition for remission rather than a claim. She used a Department of Justice form that is clearly labeled at the top as a "Petition for Remission" and that uses that phrase repeatedly throughout the form.

On July 11, 2023, after there had not been any properly executed claim received from plaintiff or anyone else, and after the time limit for filing the said claim had expired, the $44,000 that were seized was forfeited to the United States under 19 U.S.C. 1609. And several months later, the DEA sent -- and this was November 24, 2023 -- the DEA sent a letter to plaintiff by certified mail denying the petition for remission.

And the DEA did not receive a return receipt, but it checked USPS.gov and the tracking stated "delivered, left with individual on November 27, 2023." And that denial letter explicitly said that plaintiff could request reconsideration of the decision and that such request must be postmarked or received by the DEA within 10 days of her receipt of the denial

letter.  But there is no record in the DEA's files the plaintiff ever requested reconsideration of the decision.

So those are the facts here that -- you know, that show that the cash at issue that plaintiff is trying to receive now was properly forfeited and that she availed herself of the opportunity to recollect that cash by using the administrative process rather than the courts.

The Court -- in your -- Judge Tarnofsky, in your order you also asked about -- noted that there had been a sentencing hearing in August of 2024 where the government said it wasn't seeking -- did not at that time have a request for restitution or forfeiture.  So I just want to be clear that when the government said it did not, that was accurate.  By that point in time, the entire administrative forfeiture process had already been completed, and there was no request at that time for any kind of further forfeiture.

And then the last thing that I'll note is the Court asked whether the DOJ forfeiture manual has any relevant provisions.  And so I would point the Court to Section 13-1 of the Asset Forfeiture Manual.  I'm looking at a manual from 2023, it's page 153 on the one I found online, and that discusses the petition for remission process and notes that an innocent owner's right to file a petition for remission or mitigation is, quote, "distinct from the right to file a claim in an administrative or judicial forfeiture proceeding," end

quote.

I'm happy to take any questions about anything that I've just discussed.

THE COURT:  What is the asset ID on forfeiture.gov? Do you have that number?

MR. LISS:  So, I do have the asset ID number.  I don't know if it is still on the -- I don't know -- just -- I don't know if it is still on the website.  I know that it was up for a 30-day period consistent with the requirements.  But the -- let me just -- the number is 23-DEA-698942.

THE COURT:  Thank you.

Ms. McBryde-O'Neal, would you like to be heard?

MS. McBRYDE-O'NEAL:  Well, whatever he was saying just now, what I was listening to, I still stand by the fact that I had submitted those forms with the -- with Dexter's attorney at that time, which was Marne Lenox.  And her investigator was here in my home and was helping me go over the -- that form for the forfeiture because of the fact that the money that was taken from me did not belong to Dexter Washington or anything that Dexter Washington was involved in.  That was money that I had saved for my retirement.  And I have every right to save money in my house where I choose to save it.

So the only explanation that the DEA came up with was that the money was in close proximity.  Well, if the money was in close proximity—this is an apartment—then while the police

was in this apartment, while I'm in the hallway for over four hours, they have plenty enough time to take something and move it close to something else and say, okay, well, it was in close proximity.  That's not true.  It's not true.

THE COURT:  So I certainly understand the frustration and the disagreement with the conclusion that was made by the government in denying your request for the return of the funds.

Did you receive a notice back in, if you remember, November of 2023 denying the request for return and saying that you could ask for reconsideration?  Does that --

MS. McBRYDE-O'NEAL:  It came to the --

THE COURT:  -- ring any bells?

MS. McBRYDE-O'NEAL:  It was -- it was an e-mail that they sent on this phone.  Was it the 7th of November of that year?  An e-mail came first.

But the thing -- but what I want the Court to understand is that I kept repeatedly calling every -- all last summer -- I mean the summer before, 2023, want to find out the status and when -- every time I spoke to someone there, they said, oh, they're working on it, you know, and -- you know, giving me hopes that I would still want -- I would still be receiving, you know, my funds back.  But, however, that wasn't the case.

So if they allow it to go on until November, when they sent the e-mail, and then when I was checking the e-mail, then

I got the letter afterwards——could have been in November or December of 2023——and that's when I just -- I had to go down to the 500 Pearl Street and put my paperwork in down there.

THE COURT:  Okay.

So was it your understanding that you were seeking reconsideration of the decision denying your --

MS. McBRYDE-O'NEAL:  Right.

THE COURT:  -- petition through this lawsuit?

MS. McBRYDE-O'NEAL:  Yes.

THE COURT:  And Mr. Liss, as I understood your explanation of the law, the only way to challenge a denial via petition, as opposed to claim, is through reconsideration.

Is that what you were saying?

MR. LISS:  That is what I'm saying, correct.

The process is to send a request for reconsideration to the seizing agency, and that's explained in the notice letter.

And further, you know, even aside from that, you know, once the asset has been forfeited and the petition for remission is being considered, the -- you know, the forfeiture cannot be challenged at all, or the petition for remission process cannot be challenged at all in the Court.  The only thing that can be raised in a District Court is whether notice of the beginning of the proceedings originally was properly given, which, you know, there's no question here that there was

notice because she, within a few weeks of the notice being sent out, submitted a petition for remission.

THE COURT: And is there any—if you know—discretion with the agency to consider a late reconsideration request?

MR. LISS: That I am not sure about. I mean, I am happy to check with my clients about that, but it is not provided for, you know, under the -- under the regulations, the process is over once the 10 days expires.

THE COURT: I understand. If you could look into that and send a letter—you can put it on the docket—indicating whether that is an available option. I would certainly appreciate it.

And what it sounds like happened is that, you know, Ms. McBryde-O'Neal was trying vigorously to assert her interest in this property and, as pro se litigants do, and it's expected, did not appreciate what the right procedure to follow apparently was.

MR. LISS: I'm happy to speak with my client about that.

THE COURT: Thank you.

Is there anything further, Ms. McBryde-O'Neal?

MS. McBRYDE-O'NEAL: No. I had already -- had set aside the demands, but I was waiting to hear from you about the next step, you know.

THE COURT: Okay. So it sounds like -- I mean, I'm

going to double check, but it sounds like the only legally permitted way to challenge the decision denying your -- denying your request for the return of the money was a request for reconsideration to the agency that made that determination.

I've asked Mr. Liss to look into whether it's still possible for you to request reconsideration from the agency as opposed to from the Court. And he has agreed that he will ask his client and will write a letter indicating whether that is a possibility or not.

You know, otherwise I have to check the cases that he cited and the law that he cited. But it may be that this Court doesn't have the power to order the return of the funds. But I will look into it, and I'll be issuing a report shortly that addresses your claims.

With respect to the letter, Mr. Liss, if you could try to get that out by the 21st, it would be greatly appreciated. I mean, sooner is better, but if you could, I'd appreciate it.

MR. LISS:  That shouldn't be a problem.

THE COURT:  Okay.  Thank you very much.  Happy New Year to everyone, and have a lovely day.

MS. McBRYDE-O'NEAL:  You, too.  Thank you.

THE COURT:  Thanks.  Bye.

MR. LISS:  Thank you.

- - -

                    C E R T I F I C A T E


     I, Kristen J. Carannante, certify that the

foregoing transcript of proceedings in the case of

McBryde-O'Neal v. Polichetti, Docket No. 23cv10113, was

prepared using digital transcription software and is

a true and accurate record of the proceedings.



Signature  *Kristen J. Carannante*
           _____

           KRISTEN J. CARANNANTE, RPR, RMR, FCRR



Date:      January 27, 2025